<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____

MARIA MENDEZ,                                      :
                                                   :
      Plaintiff,                               :
                                                   :
      v.                                       :
                                                   :      Civil Action No. 03-5243 (JAG)
JO ANNE B. BARNHART,                               :
COMMISSIONER OF SOCIAL SECURITY                    :
                                                   :                 **OPINION**
      Defendant.                               :
                                                   :
_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

**INTRODUCTION**

Plaintiff Maria Mendez ("Plaintiff") seeks review of the Commissioner of Social

Security's ("Commissioner's") decision denying her application for Social Security Disability

Insurance Benefits ("SSDI"),[1] pursuant to 42 U.S.C. § 405(g)(2000).[2]  Plaintiff asserts that the

Commissioner's decision was not supported by substantial evidence and should therefore be

reversed, or in the alternative, remanded to the Commissioner for reconsideration.  For the

_____

[1] SSDI is a program of social insurance under which covered employees and their employers pay taxes into a special fund administered separately from the general federal revenues to purchase protection against the economic consequences of old age, disability and death. SSDI provides benefits to such persons who have become disabled.

[2] This section of the Social Security Act (hereinafter the "Act") provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination. The appropriate forum for this action is the district court of the United States judicial district in which the Plaintiff resides. 42 U.S.C. § 405(g).

1

reasons set forth below, this Court affirms the Commissioner's final decision denying disability

benefits.

## PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on October 24, 2000 in

which she alleged disability and inability to work since September 11, 2000. (Tr. 72.)[3]  Following

denial on initial (Tr. 43) and reconsideration (Tr. 54) determinations, Plaintiff filed a request for

a hearing on March 12, 2002. (Tr. 57.)  Subsequently, a hearing was held on April 21, 2003

before Administrative Law Judge Christopher P. Lee ("ALJ Lee").  Reviewing the application *de*

*novo*,[4] ALJ Lee issued his decision on August 22, 2003. (Tr. 9-17.)  The following is a summary

of his findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through August 22, 2003.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).
4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The claimant's allegations regarding her limitations are not totally credible.
6. The claimant retains the ability to lift up to twenty five pounds and sit, stand and walk as needed but is unable to work in an environment that contains more than minimal interaction with others on a sustained basis.
7. The claimant's past relevant work as assembler did not require the performance of

---

[3] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

[4] If the claimant "receives an adverse reconsideration determination, he is entitled to an evidentiary hearing and *de novo* review by an administrative law judge." Heckler v. Day, 467 U.S. 104, 106 (1984).

work-related activities precluded by her residual functional capacity.[5]

8.     The claimant's medically determinable lumbar impairment and adjustment disorder with depressed mood do not prevent the claimant from performing her past relevant work.

9.     The claimant was not under a "disability" as defined in the Act, at any time through August 22, 2003, the date of the decision. (20 C.F.R. §404.1520(e)).

(Tr. 16-17.)

Based on these findings, ALJ Lee concluded that Plaintiff is not entitled to a period of disability or Disability Insurance Benefits under Sections 216(i) and 223 of the Act. (Tr. 17.)  The Social Security Administration Appeals Council affirmed ALJ Lee's decision on September 17, 2003. (Tr. 4-6.)  Plaintiff subsequently filed this action, seeking review of the Commissioner's final decision, pursuant to 42. U.S.C. § 405(g).

## STATEMENT OF THE FACTS

### A. Background

Plaintiff Maria Mendez is 52 years old with an elementary school education. (Tr. 23, 24, 85, 92, 98, 128.)  She is not a U.S. citizen. (Tr. 22, 72.)  Plaintiff does not speak English and has limited ability to read Spanish. (Tr. 23, 24, 85, 92, 98, 128.)

From January 1989 to September 2000, Plaintiff worked as an assembler on an assembly line for cable wires and switches. (Tr. 24, 87, 107-08, 164-65.)  At the hearing, Plaintiff testified that her job entailed lifting 25 to 30 boxes per day, each box weighing about 25 pounds. (Tr. 25.)[6] She reported her job required her to stand more often than sit. (Tr. 24-25.)

Plaintiff alleged physical and mental disability since September 11, 2000 when she was

_____

[5] Residual functional capacity is an assessment to determine what work activities the claimant can perform despite her impairments. 20 C.F.R. §404.1545(a)(2003).

[6] Plaintiff previously indicated, however, that this position did not require frequent lifting. (Tr. 108.)

3

fired from her job.  She stated that her lay off was either due to nerves (Tr. 25) or because she

fought with co-workers. (Tr. 26.)  Plaintiff takes a number of medications to make her "tranquil"

and calm her down. (Tr. 28.)

Plaintiff currently lives with her youngest son who takes care of laundry, cooking,

cleaning, and shopping. (Tr. 32.)  Plaintiff stated that she can only sit or stand for ten minutes at a

time. (Tr. 31.)  She also sometimes needs assistance dressing and bathing. (Tr. 32.)

**B. Medical Evidence Relating To Physical Impairments**

The record indicates that Plaintiff received medical attention on several occasions.

1. Examination by Dr. Lucrecia Alburquerque

Plaintiff was seen approximately thirty times at Park Avenue Medical Associates from

1997 to January 2001, and often saw Dr. Lucrecia Alburquerque.  Plaintiff was treated at Park

Avenue for left shoulder pain that radiated to her arm, hypertension, anxiety,[7] depression,[8] and

palpitations. (Tr. 192-96.)

2. Examination by Regular Care Physician, Dr. Julio Urena (Tr. 339-62.)

Plaintiff's regular care physician, Dr. Julio Urena provided treatment records from 2002-

_____

[7] Anxiety disorder is "a disorder in which anxiety is the most prominent feature.  The symptoms range from mild, chronic tenseness, with feelings of timidity, fatigue, apprehension, and indecisiveness, to more intense states of restlessness and irritability that may lead to aggressive acts, persistent helplessness or withdrawal.  In extreme cases, the overwhelming emotional discomfort is accompanied by physical responses, including tremor, sustained muscle tension, tachycardia, dyspnea, hypertension, increased respiration, and profuse perspiration." Mosby's Medical, Nursing, & Allied Health Dictionary, 111 (5th ed. 1998) (hereinafter "Mosby's").

[8] Depression is "an abnormal emotional state characterized by exaggerated feelings of sadness, melancholy, dejection, worthlessness, emptiness and hopelessness that are inappropriate and out of proportion to reality." Mosby's at 467.

4

2003. (Tr. 339-62.)  Plaintiff reported that she could walk 30 blocks and go up four steps. (Tr.

345.)  Dr. Urena's diagnosis was that Plaintiff suffered from vertigo[9], anxiety, depression, and

other ailments. (Tr. 347.)

  3. Examination by Dr. Michael Pollack, State Agency Physician

  Plaintiff had a consultative session with Dr. Pollack on January 17, 2001.  Dr. Pollack

found spasm, tenderness, and limited motion in the lumbar spine. (Tr. 223.)  His diagnosis

included asthma, chronic low back pain, and hypertension with a "fair" prognosis. (Tr. 224.)  His

physical examination of Plaintiff revealed no obvious deformity. (Tr. 223.)  Plaintiff was not

using any form of walking assistance and had no difficulty rising from a chair. Id.  Blood

pressure was high normal. Id.  Heart test and pulmonary test were normal, and a chest x-ray

revealed an enlarged but otherwise normal heart. (Tr. 225-30.)

  4. Physical Residual Functional Capacity Assessment[10]

  Another state agency physician reviewed the record and gave Plaintiff a primary

diagnosis of bronchial asthma and chronic lower back pain, and a secondary diagnosis of

depression and hypertension. (Tr. 286.)  He found that Plaintiff could lift or carry frequently,

items weighing ten pounds and lift or carry occasionally, items weighing 20 pounds. (Tr. 287.)

Plaintiff could stand or walk (with normal breaks) for a total of about six hours in an eight-hour

day, and sit (with normal breaks) for about six hours in an eight-hour day. Id.  The physician

determined that Plaintiff should only occasionally balance, stoop, kneel, or crouch. (Tr. 288.)  He

---

  [9] Vertigo is "a sensation of instability, giddiness, loss of equilibrium or rotation, caused by a disturbance in the semicircular canal of the inner ear or the vestibular nuclei of the brainstem." Mosby's at 1707.

  [10] This exhibit is unsigned.

said that Plaintiff should avoid all exposure to dusts, fumes, and poor ventilation, avoid even

moderate exposure to hazards like machinery and heights, and avoid extreme heat or extreme

cold. (Tr. 290.)

The physician concluded that Plaintiff's symptoms were attributable to a medically

determinable impairment, and that the severity and duration were proportionate to the medically

determinable impairment. (Tr. 291.)  Finally, the doctor concluded that the severity of the

symptoms and its alleged effect on function is consistent with Plaintiff's psychiatric state. Id.

5. Evaluation by Dr. J. Drice

On January 18, 2002, Dr. J. Drice from the State Agency reviewed the record. (Tr. 243.)

Dr. Drice opined that Plaintiff had no physical functional limitations. Id.

C. **Medical Evidence Relating To Mental Impairments**

1. Examination by Mr. Luis Delacruz, Clinician at Barnert Counseling

Pursuant to Dr. Urena's recommendations, Plaintiff received regular psychotherapy and

monthly monitoring from Dr. Phil Feldman and Clinician Mr. Luis Delacruz at Barnert Hospital.

(Tr. 296- 312.)  Mr. Delacruz observed that Plaintiff was irritable, anxious, and depressed. (Tr.

302.)  Plaintiff sometimes reported hearing voices or seeing shadows and had trouble sleeping.

Id.  The record states that she suffered from depression beginning in 1994, and tried many

medications including Trazodone, Alprazolan, Zoloft and Prozac with poor results. (Tr. 301.)

Plaintiff reported that she had conflicts with her daughter-in-law and husband. (Tr. 302.)

Mr. Delacruz found Plaintiff's speech goal directed, relevant, and logical. (Tr. 303.)  Her

memory, concentration, and attention span were unimpaired, and her insight limited. (Tr. 308-

09.)  She was gaining weight and had poor energy for activities at home. (Tr. 303.)  She had

limited interpersonal relations. (Tr. 308.)  Mr. Delacruz found Plaintiff to have a Global

Assessment of Functioning ("GAF") score of 65 and diagnosed Plaintiff as suffering from

depression without psychosis.[11] (Tr. 310.)  His recommendations for treatment included

psychiatric evaluation, medication monitoring, and individual psychotherapy. Id.

    2. Psychiatric Evaluation by Dr. C. Dicovsky

    On October 23, 2001, Dr. Dicovsky performed a psychiatric evaluation.  He found

Plaintiff's speech normal in rate and tone, her mood neutral, and her affect dysphoric.[12] (Tr. 315.)

He reported Plaintiff was alert and oriented without any deficits in cognitive functions.  Her

impulse control was poor, and her judgment and insight were fair. Id.  He diagnosed Plaintiff as

possibly having a Bipolar disorder,[13] and recommended Plaintiff take

---

[11] Mr. Delacruz's diagnosis was: Axis I: Major depression without psychosis; Axis II:
Deferred; Axis III: Gastrointestinal problems; Axis IV: Problems with primary support group;
Axis V: GAF 65. (Tr. 310.)  The multiaxial system involves an assessment on several axes, each
of which refers to a different domain of information that may help the clinician plan treatment
and predict outcomes. Axis I refers to clinical syndromes, Axis II refers to development disorders
and personality disorders, Axis III refers to physical disorders and conditions, Axis IV refers to
the severity of psychosocial stressors, and Axis V refers to GAF. American Psychiatric
Association, Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) 27 (4th
edition Text Revision 2000).

A GAF between 61 and 70 indicates some mild symptoms or some difficulty in social,
occupational or school functioning but generally good functioning skills, and denotes the
presence of some meaningful interpersonal relationships. A GAF of between 51 and 60 indicates
moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational or school functioning (e.g. few friends, conflicts with
peers or co-workers). DSM-IV-TR at 34.

[12] Disphoria is "a disorder of affect characterized by depression and anguish." Mosby's at
526.

[13] Bipolar disorder is "a major mental disorder characterized by episodes of mania,
depression, or mixed mood.  One or the other phase may be predominant at any given time, one
phase may appear alternately with the other, or elements of both phases may be present

7

Depakote and Remeron.[14] (Tr. 315-16.)

3. <u>Park Avenue Medical Association Psychiatrist Report</u>

A Social Security Disability Psychiatric Report covering July 1997 to January 2001, described Plaintiff as sad, though not suicidal, and having occasionally poor concentration. (Tr. 234.)  The doctor reported that Plaintiff had never been hospitalized for any psychological disorders. (Tr. 233.)  He gave Plaintiff a good prognosis with medication and monitoring, and believed that the claimant is capable of managing or directing the management of benefits in her own best interest. (Tr. 237.)

4. <u>Examination by State Examiner Dr. Joseph Buceta</u>

On January 17, 2001, Dr. Joseph Buceta conducted a consultative medical examination of the Plaintiff.  Dr. Buceta found signs of depression and memory deficits. (Tr. 220.)  Plaintiff was unable to remember three items after five minutes of distraction. <u>Id.</u>  Though he found her speech "coherent and goal directed," he noted that her insight could not be reliably assessed because she tended to exaggerate problems. <u>Id.</u>  She did not make an effort to remember important aspects of her past history. <u>Id.</u>  Her long term memory was, however, fair. <u>Id.</u>

---

simultaneously.  Characteristics of the manic phase are excessive emotional displays, such as excitement, elation, euphoria, or in some cases irritability accompanied by hyperactivity, boisterousness, impaired ability to concentrate, decreased need for sleep and seemingly unbounded energy.  In extreme mania, a sense of omnipotence and delusions of grandeur may occur.  In the depressive phase, marked apathy and underactivity are accompanied by feelings of profound sadness, loneliness, guilt and lowered self-esteem." <u>Mosby's</u> at 196.

[14] Dr. Dicovsky's diagnosis of Plaintiff was: Axis I: Possibly Bipolar Disorder; Axis II: Deferred; Axis III: None; Axis IV: Moderate Stress, Axis V: GAF 60. (Tr. 315-16.)

Dr. Buceta's diagnoses were: Axis I: adjustment disorder[15] with depressed mood chronic; Axis II: dependent traits, histrionic traits,[16] rule out histrionic personality disorder;[17] Axis III: stomach ulcers, high blood pressure, arthritis, asthma; Axis IV: joblessness, chronic mental illness; and Axis V: GAF 60. Id.

Dr. Buceta noted that Plaintiff was driven to the office by a friend. (Tr. 218.) Plaintiff stated that she cooks her own breakfast in the morning, and watches television and goes for a walk in the afternoon. (Tr. 219.) She takes multiple medications for her depression, stomach ulcers, blood pressure, arthritis and asthma. Id. She reported her mood as mildly depressed, her appetite as poor, and her sleep pattern as fair with the medication. Id. She had lost 20 pounds in one year. Id.

5. Evaluation by Dr. Thomas P. Shubeck, State Agency Psychologist

Dr. Shubeck, a State Agency psychologist, reviewed Plaintiff's records on February 5, 2001. (Tr. 267-84.) He concluded that Plaintiff had an adjustment disorder with depressed mood,

---

[15] Adjustment disorder is a temporary disorder of varying severity that occurs as an acute reaction to overwhelming stress in persons of any age who have no apparent underlying mental disorders. Symptoms include anxiety, withdrawal, depression, brooding, impulsive outbursts, crying spells, attention-seeking behavior, enuresis, loss of appetite, aches, pains and muscle spasms. Mosby's at 41.

[16] Histrionic traits include behavioral patterns and attitudes that are overreactive, emotionally unstable, overly dramatic and self-centered, exhibited as a means of attracting attention, consciously or unconsciously. Id. at 767.

[17] Histrionic personality disorder is "a disorder characterized by dramatic reactive and intensely exaggerated behavior, which is typically self-centered. It results in severe disturbance in interpersonal relationships that can lead to psychosomatic disorders, depression, alcoholism, and drug dependency. Symptoms include emotional excitability, such as irrational angry outbursts or tantrums; abnormal craving for activity and excitement; overreaction to minor events; manipulative threats and gestures; egocentricity; inconsiderateness; inconsistency; and continuous demand for reassurance generated by feelings of helplessness and dependency." Id.

and chronic and histrionic traits. (Tr. 270, 274.)

He found mild limitations in Plaintiff's ability to maintain social functioning, mild limitations in Plaintiff's ability to perform daily living activities, moderate limitations in Plaintiff's ability to maintain concentration, persistence or pace, and no repeated episodes of decompensation[18] of an extended duration. (Tr. 277.)  Plaintiff was moderately limited in "the ability to understand and remember detailed instructions," "the ability to carry out detailed instructions" and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 281-82.)  Plaintiff was not significantly limited in the 17 other categories of the mental residual functional capacity assessment. Id.

Dr. Shubeck concluded that there were no marked impairments and Plaintiff was able to perform work-related activities in low contact settings. (Tr. 283.)

6. Evaluation by Dr. Michael D'Anton

Dr. Michael D'Anton, a State Agency reviewing psychologist, concluded that Plaintiff was not disabled. (Tr. 41.)  He agreed with the conclusions of Dr. Shubeck. (Tr. 285.)

7. Examination by Dr. Michael Pollack

Dr. Pollack's psychiatric examination diagnosed Plaintiff with depression, but ruled out a psychiatric disorder. (Tr. 224.)  Plaintiff cried during the interview and denied any delusions or hallucinations. Id.  Her reliability was "relatively adequate" and she was "cooperative." (Tr. 222.)

---

[18] Decompensation is "the failure of a system, as cardiac decompensation in heart failure." Id. at 449.

He noted a flat affect.[19] Id.

       8. Psychiatric Summary

      A psychiatric summary, dated February 28, 2002, by an unidentified author concluded that Plaintiff had a "moderate psych impairment." (Tr. 294.)  The summary noted that Plaintiff showed no cognitive dysfunction or thought disorder, but had poor impulse control. Id.  The doctor assessed her judgment and insight to be "fair." Id.  He recommended minimal "people-contact" jobs such as a silver wrapper, sample color maker, and paper inserter. Id.

**D. Plaintiff Testimony at ALJ Hearing**

      At the hearing before ALJ Lee, Plaintiff testified that she was 52 years of age and attended elementary school through the fourth grade in Santo Domingo, Dominican Republic. (Tr. 22-23.)  Plaintiff testified that she has not been receiving benefits of any kind, but gets monetary assistance from her three children. (Tr. 22.)  Plaintiff also testified that she lives with her youngest son, and she is not married. (Tr. 22-23.)

      ALJ Lee questioned Plaintiff about her medical treatment. (Tr. 26-30.)  Plaintiff testified that she sees psychologist, Dr. Bhatia, and clinician, Mr. Delacruz, sometimes every month and sometimes twice a week in order to obtain prescriptions and consultation regarding medications. (Tr. 27.)  Plaintiff testified that the medication prevents her from "going crazy" and calms her down. (Tr. 28.)  Dr. Urena is Plaintiff's primary care physician and treats her for stomach pain, back pain, and diabetes. (Tr. 27.)  Plaintiff testified that she sees him monthly. Id.  Plaintiff takes medication to relieve her physical pain, but the medication only relieves some of the pain. (Tr.

---

[19] Flat affect is "the absence or near absence of emotional response to a situation that normally elicits emotion. It is observed in schizophrenia and some depressive disorders." Id. at 640.

36.)

Plaintiff testified that she was hospitalized in May 2002 for a few hours because she heard voices. (Tr. 30.)  She further testified that she broke a rib trying to run from the voices. Id. She testified that she considered killing herself with a knife in March 2003. (Tr. 34.)

Plaintiff described her job as assembler as consisting of more standing than sitting. (Tr. 24.)  Plaintiff said that she was allowed to stand up or sit as she wanted. (Tr. 25.)  She said she had to lift 25 to 30 boxes a day, weighing approximately 25 pounds each. (Tr. 25.)

Plaintiff testified that she cannot remain standing or sitting for more than ten minutes at a time because of pain in her hips, back, and arm. (Tr. 31.)  Plaintiff also testified that she can only walk three or four blocks at a time, and needs to take someone with her to the grocery store. Id. She testified that she can only lift ten pounds and sometimes needs assistance dressing and bathing. (Tr. 32.)  Plaintiff testified that she cannot cook, do laundry or clean without assistance. Id.  Plaintiff testified that her day mostly consists of lying down. (Tr. 33.)

Plaintiff testified that she was fired from her job because of her nerves and because she was not doing good work. (Tr. 25.)  She also said that she got fired for fighting with her co-workers. (Tr. 26.)

## DISCUSSION

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court's review of the Commissioner's final decision is limited to a determination of whether ALJ Lee applied the proper legal standards in making his findings of fact, and whether these findings are supported by substantial evidence as viewed in the record as a whole.

Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989).

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. Tayborn v. Harris, 667 F.2d 411, 413 (3d Cir. 1980) (quoting Hess v. Secretary of Health Education and Welfare, 497 F.2d 837, 841 (3d Cir. 1974)). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972); Curtin v. Harris, 508 F.Supp. 791,793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is

13

of no consequence that the record contains evidence which may also support a different

conclusion. Blalock, 483 F.2d at 775.

## B. Statutory Standards

In order to qualify for disability benefits, a claimant must establish that he is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A);

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Under the regulations promulgated by the

Commissioner, a claimant will be considered disabled and receive benefits only if he

demonstrates that:

> (1) he is not currently engaged in any substantial gainful activity; (2) he is severely
> impaired; and either (3) his impairment is listed in 20 C.F.R. Part 404, Subpart P. App. 1,
> in which case he is presumptively disabled, or (4) his impairment prevents him from
> meeting the physical and mental demands of the kind of job that he has held in the past,
> and (5) his impairment together with his age, education, and past work experience also
> prevents him from doing any other sort of work.

20 C.F.R. § 404.1520(b)-(f); Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  The burden is

on the claimant to prove the first four factors, but once the claimant has demonstrated that he is

unable to perform his former job, "the burden shifts to the Commissioner to prove that there is

some other kind of substantial gainful employment he is able to perform." Kangas, 823 F.2d at

777.

The Commissioner considers all submitted opinions to evaluate a claim for disability

benefits.  If the medical evidence presented is inconsistent, then the evidence will be weighed in

order to reach a decision. 20 C.F.R. § 404.1527.  The greatest weight is accorded to medical

opinions of the treating physicians.  In reviewing a decision by the Commissioner, a court gives

greater weight to the findings of a treating physician than to the findings of a physician who has examined a claimant only once or not at all. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). Controlling weight is given when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not "well supported," the length and frequency of treatment is considered. The more frequently examined, closely followed a claimant has been, the greater the weight his attending doctor's opinion will carry. The more evidence produced in support of a medical opinion and consistency with the entire record, generally the greater the weight it will receive regardless of whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(3), (4), (5).

Furthermore, an ALJ may not ignore a claimant's subjective complaints of pain when evaluating a disability claim. Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986). Although there must be objective medical evidence of a condition which could produce pain, objective evidence of pain itself is not required. Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). The Third Circuit requires: (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).

## C. The Five-Step Evaluation Process and the Burden of Proof

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[20] 20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; see also Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. 20 C.F.R. § 404.1520(c).  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Regulations No. 4.  20 C.F.R. § 404.1520(d).  If the claimant's impairment(s) meets or equals one of the listed impairments she will be found disabled under the Act. 20 C.F.R. § 404.1520(d).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is unable to resume her past work, and her condition is deemed "severe," yet not listed, the evaluation moves to the final step.  At the final step, the burden of

---

[20] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that the claimant can perform, the claimant will be found not disabled. 20 C.F.R. § 404.1560(c)(1).

The Commissioner considers all submitted opinions to evaluate a claim for disability benefits.  If the medical evidence presented is inconsistent, then the evidence will be weighed in order to reach a decision. 20 C.F.R. § 404.1527.  The greatest weight is accorded to medical opinions of treating physicians.  In reviewing a decision by the Commissioner, a court gives greater weight to the findings of a treating physician than to the findings of a physician who has examined a claimant only once or not at all. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  Controlling weight is given when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).  When a treating physician's opinion is not "well supported," the length and frequency of treatment is considered.  The more a claimant has been frequently examined and closely followed, the greater weight his attending doctor's opinion will carry.  The more evidence produced in support of a medical opinion and consistency with the entire record, generally the greater weight it will receive regardless of whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(3)-(5).

**D. Special Procedure For Mental Impairments Under 20 CFR § 404.1520a**

An individual is entitled to disability benefits under the Social Security Act if the individual suffers from either a medically determinable physical impairment or a medically

17

determinable mental impairment.  42 U.S.C. § 423(d)(1)(A).  Even though mental impairments are difficult to objectively verify, they must be given equal importance as physical impairments. Alvarez v. Califano, 483 F. Supp. 1284, 1286 (E.D. Pa. 1980) ("the relative imprecision of psychiatric methodology and the absence of substantiating documentation is not a sufficient basis upon which to reject [a psychiatrist's] report").  Nothing in the Act or regulations requires that mental disability be a result or cause of objectively verifiable pain.  Woody v. Secretary of Health and Human Services, 859 F.2d 1156, 1161 (3d Cir. 1988).

The regulations require the ALJ to follow a special procedure to evaluate the severity of mental impairments. 20 C.F.R. § 404.1520a;  Sharp v. Bowen, 705 F. Supp. 1111, 1118 (W.D. Pa. 1989).  The purpose of the Social Security Administration's ("SSA") special procedure is to identify any additional evidence necessary for the evaluation of the disorder, to consider and evaluate all aspects of a Social Security Disability benefits claimant's disorder relevant to the claimant's ability to work, and to organize and present the findings in a clear, concise, and consistent manner.  20 C.F.R. § 404.1520a(a).  The five step process for determining mental impairments mirrors the steps for determining whether a physical impairment exists.

First, the ALJ must determine whether a mental impairment exists.  A mental status examination and psychiatric history normally provide all of the information needed to show the existence of an impairment.  20 C.F.R. § 404.1520a(b)(1).

Once the ALJ determines that a mental impairment exists, it then indicates whether there are medical findings that are relevant to a claimant's ability to work.  20 C.F.R. § 404.1520a(b)(2).  This is determined by rating the degree of functional loss resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration,

persistence, or pace; and (4) deterioration or decompensation at work ("Section B Criteria"). 20 C.F.R. § 404.1520a(b)(3). The degree of functional loss in each of these areas is rated on a scale that ranges from no limitation to a level of severity incompatible with the ability to perform work-related functions. 20 C.F.R. § 404.1520a(b)(3).

Third, once the SSA rates the degree of a claimant's functional loss due to a mental impairment, it then determines the severity of that impairment. 20 C.F.R. § 404.1520a(c). The SSA will normally conclude that an impairment is not severe if the degree of limitation for each of the four areas is indicated as being at the lower end of the scale. 20 C.F.R. § 404.1520a(c)(1). But if a psychiatrist's medical opinion establishes that Plaintiff is limited in at least two areas of function, the ALJ should determine that the impairment is severe. Sharp, 705 F. Supp. at 1119.

Fourth, if a mental impairment is severe, the SSA must determine if it meets or equals a listed impairment. It does this by comparing the conclusions previously reached on the form against the criteria for the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(c)(2).

Finally, if the impairment does not meet or equal the listing, the SSA does a residual functional capacity assessment. 20 C.F.R. § 404.1520a(c)(3). The SSA is required to incorporate all pertinent findings and conclusions based on the procedure in its decision rationale. It must show the significant history, including examination, laboratory findings, and functional limitations, that the agency considered in reaching its conclusions about the severity of the impairment. 20 C.F.R. § 404.1520a(c)(4).

**D. ALJ Lee's Findings**

ALJ Lee performed the five step evaluation and concluded that Plaintiff was not disabled, as defined in 20 C.F.R. § 404.1520. ALJ Lee found that Plaintiff did not engage in substantial

19

gainful activity since her alleged onset date of disability in September 2000. (Tr. 12.)

At the second step, ALJ Lee found that the Plaintiff possessed a lumbar impairment and an adjustment disorder with depressed mood. (Tr. 13.)  The ALJ based his assessment of the severity of Plaintiff's mental impairments on numerous medical evaluations.  ALJ Lee referred to Dr. Buceta's evaluation finding that Plaintiff showed signs of depression and memory deficits. Id.  ALJ Lee also cited the reports of Mr. Delacruz and Dr. Feldman (the supervising psychologist at Barnert Hospital) indicating Plaintiff was depressed, irritable, and anxious. Id. Further, ALJ Lee cited Dr. Dicovsky's report concluding that Plaintiff possibly had a bipolar disorder. Id.  He did not, however, find any other severe impairments, determining that Plaintiff's other claimed illnesses (hypertension and asthma) were not supported by medical tests so as to rise to the level of a severe impairment under the Act. Id.

Third, ALJ Lee found that a review of the medical documentation failed to show the existence of abnormalities which are comparable in severity to the criteria set forth in the Listing of Impairments contained in Appendix 1 of Subpart P, Regulations No. 4.  In evaluating the severity of Plaintiff's mental condition, he rated Plaintiff's limitations in engaging in activities of daily living as "mild," her ability to maintain an adequate level of social functioning as "markedly limited," her limitations in maintaining concentration persistence or pace as "mild," and no repeated episodes of decompensation. (Tr. 14.)

Fourth, ALJ Lee found that the Plaintiff had the residual functional capacity, both physically and mentally, to perform her past job as an assembler.  He found Plaintiff's testimony was inconsistent and therefore not credible regarding aspects of her physical and mental condition. (Tr. 15.)  ALJ Lee found that the Plaintiff, despite her lumbar impairment, retains the

ability to lift objects between 20 and 25 pounds. Id.  In addition, based on reports by Barnert

Hospital, Dr. Buceta, and Dr. Shubeck, ALJ Lee found that the Plaintiff retains the residual

functional capacity of minimal social interaction that is necessary for her occupation as an

assembler. (Tr. 16.)

Upon conceding that Plaintiff would be able to perform her past job as an assembler, ALJ

Lee did not perform step five of the analysis.

## ANALYSIS

Plaintiff contends that the Commissioner's decision was not supported by substantial

evidence, failed to consider the totality of the evidence, erred in finding that Plaintiff's subjective

complaints of pain were not credible, and did not provide a vocational expert.  This Court finds

that there is ample evidence to substantiate ALJ Lee's determination.

## A. ALJ Lee Properly Evaluated Plaintiff's Mental Impairments and the Determination to Deny Benefits Was Supported By Substantial Evidence

Plaintiff presented a claim alleging mental and physical impairments.[21]  With regard to

---

[21] Plaintiff did not challenge ALJ Lee's decisions regarding Plaintiff's physical impairments.  Plaintiff claimed she was disabled due to pain in her left shoulder, arm, and hip. (Tr. 14.)  She also claimed to suffer from palpitations, hypertension, and asthma.  Plaintiff stated her ability to sit, stand, walk, and lift were limited as a result of her impairments. Id.  ALJ Lee found that, although some of Plaintiff's impairments were severe, they did not render her disabled under the meaning of the Act.  Id.  ALJ Lee found that despite evidence indicating Plaintiff had limited motion in her lumbar spine, there was no evidence of diagnostic tests proving disc herniation, spinal stenosis, or nerve root involvement.  (Tr. 15.)  Further, there was no evidence of "muscle atrophy, gait abnormalities or deficits in reflex, sensory or motor function such as that likely to arise in an individual with a chronic or acute spinal impairment." Id.  ALJ Lee also cited Dr. Pollack's observation that Plaintiff had no difficulties climbing on or off the examination table and rising from the seated position.  Dr. Pollack noted that this observation indicated Plaintiff's spinal motion was not severely limited.  Id.
ALJ Lee decided Plaintiff's allegations of hypertension and asthma were not severe.  (Tr. 13.)  ALJ Lee found that Plaintiff was diagnosed and treated for hypertension, but, concluded

Plaintiff's mental impairments, Plaintiff complains of depression, loss of concentration, memory loss, and a bipolar disorder. (Pl. Mem. at 7.)  Plaintiff contends that ALJ Lee did not properly evaluate her mental limitations at steps three and four of the five step evaluation process.  This Court finds that substantial evidence in the record supports ALJ Lee's determination that Plaintiff has no mental limitation that would render her disabled within the meaning of the Act.

In evaluating a claim for benefits by a claimant alleging mental impairments, the ALJ must determine whether a severe mental impairment exists.[22]  ALJ Lee found that Plaintiff suffered from a severe mental impairment. (Tr. 13.)  ALJ Lee referred to Dr. Buceta's report concluding Plaintiff showed signs of depression and memory deficit. Id.  The ALJ also cited the report of Mr. Delacruz and Dr. Feldman concluding Plaintiff was a depressed, irritable and an anxious individual. Id.  Finally, ALJ Lee referred to Dr. Dicovsky's report finding Plaintiff to

─────────────────────

that there were no significant complications as a result.  Likewise, although Plaintiff was diagnosed with asthma, her pulmonary function was within normal limits with "no signs of any obstructive or restrictive disease." Id.
        The ALJ concluded that Plaintiff's physical limitations would not limit her functional ability to perform work related activities.  (Tr. 15.)

    [22] A mental status examination and psychiatric history generally provide all of the information necessary to determine the existence of an impairment. 20 C.F.R. § 404.1520a(b)(1). A Psychiatric Review Technique Form (PRTF) is to be used when evaluating the severity of mental impairments under 20 C.F.R. § 404.1520a.  The PRTF is essentially a checklist tracking the requirements of the Listing of mental disorders. Woody, 859 F.2d at 1159.  The ALJ must discuss the evidence considered in reaching the conclusions expressed on the form. Woody, 859 F.2d at 1159.
        The ALJ may complete the document without the assistance of a medical adviser. 20 C.F.R. § 404.1520a(d)(1)(i).  Courts have noted that an ALJ need not complete a PRTF if his decision may be affirmed because sufficient evidence in the record supports his findings. Dombroski v. Apfel, 1998 WL 372551 (E.D. Pa. 1998); see also Thornsberry v. Comm'r of Social Security, 37 Fed. Appx. 749, 751 (6th Cir. 2002).  Although ALJ Lee did not attach an official PRTF, his decision contains all the steps required by the PRTF and is supported by substantial evidence.

have a possible bipolar disorder. Id.  ALJ Lee concluded that Plaintiff had a severe impairment and proceeded to determine whether the impairment met or equaled the Listing of Impairments.

In Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000), the Court of Appeals for the Third Circuit found that the failure of an ALJ to explain the reasons for his decision at step three of the inquiry rendered the ruling "hopelessly inadequate" and "beyond meaningful judicial review." Burnett, 220 F.3d at 119-20.  An ALJ must offer an analysis supported by a fully developed record explaining whether a plaintiff's impairments, either singly or in combination, are equal to a listed impairment. Id. at 120.  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), affirms and clarifies the standard articulated by the Third Circuit in Burnett, explaining that Burnett does not require an ALJ to use particular language or adhere to a particular format in conducting his analysis.  According to the Jones court, "the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." 364 F.3d at 505.  In Jones, the Third Circuit determined that "the ALJ's decision, read as a whole, illustrate[d] that the ALJ considered appropriate factors in reaching the conclusion that [the plaintiff] did not meet the requirements for any listing." Id.

ALJ Lee's decision determining that Plaintiff's impairments did not meet a listed impairment satisfied the requirements of both Burnett and Jones.  The evidence in the record amply supports ALJ Lee's determination that Plaintiff did not suffer from a medically determinable impairment that meets or equals one in the Listings.  Neither Plaintiff's treating physicians nor any state agency psychiatrists determined that Plaintiff suffered from an impairment in the Listings.  To discredit the ALJ's findings, Plaintiff relies on cases where at least one psychiatrist determined the particular claimant was mentally disabled.  See Alvarez,

23

483 F. Supp. at 1286.

Dr. Pollack determined Plaintiff suffered from a psychiatric disorder and diagnosed Plaintiff with depression. (Tr. 224.)  Dr. Buceta, however, found no histrionic personality disorder. (Tr. 220.)  Plaintiff's treating clinician, Mr. Delacruz, diagnosed her with depression, but no psychosis. (Tr. 310.)  Dr. Shubeck explicitly determined Plaintiff was not disabled. (Tr. 39.)  Even Dr. Dicovsky, who diagnosed Plaintiff with a possible bipolar disorder, determined she had a high Global Assessment of Functioning score. (Tr. 315.)

In addition, all of the physicians' prognoses ranged from "fair" to "good."  Notably, there are no prognoses of "poor" in the Plaintiff's medical record.  See Sharp v. Bowen, 705 F. Supp. at 1114.  Dr. Buceta determined Plaintiff's prognosis to be "fair" despite finding that Plaintiff had an adjustment disorder. (Tr. 221.)  Plaintiff also received a "good" prognosis in a social security disability psychiatric report. (Tr. 237.)

Plaintiff's lack of psychiatric hospitalizations further supports ALJ Lee's determination that she was not disabled.  See Sharp, 705 F. Supp. at 1114 (plaintiff was in hospital approximately thirty times for treatment of multiple physical and mental impairments).  In the present case,  Plaintiff was never hospitalized for psychiatric impairments (Tr. 331, 233) thus reaffirming that ALJ Lee's decision was supported by substantial evidence.  See Carbonara v. Bowen, 1989 WL 30932 (E.D. Pa.) (where there was contradictory medical evidence, and Plaintiff had never been hospitalized for illness, ALJ appropriately determined that functional limitations in four categories was slight).

After establishing that a mental impairment existed, ALJ Lee performed step four of the five step evaluation and determined Plaintiff retains the ability to perform her past work.  First,

ALJ Lee found that Plaintiff was only mildly limited in her daily living activities. (Tr. 14.) Activities of daily living include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence and caring appropriately for one's grooming and hygiene. Woody, 859 F.2d at 1162. ALJ Lee relied on Plaintiff's report to Dr. Buceta, which indicated she was able to prepare her own meals, maintain her home, and wash her laundry. (Tr. 14.) Plaintiff was also able to manage her financial affairs and follow the plots of the television programs she viewed. Id.

ALJ Lee found Plaintiff's social functioning was markedly limited, but accurately noted that this was only one factor to consider.[23] To determine Plaintiff's ability to function socially, the ALJ must examine whether the claimant can interact appropriately and communicate effectively and clearly with others. Sharp, 705 F. Supp. at 1119. Plaintiff's history of conflict with others, her irritability, and the fact that she lost her job because of frequent arguments with her co-workers informed ALJ Lee's determination that Plaintiff's social functioning was markedly limited. (Tr. 14.) While Dr. Shubeck's evaluation indicated Plaintiff was moderately limited in her ability "to understand and remember detailed instructions," "to carry out detailed instructions," to "complete a normal workday and workweek without interruptions from psychologically based symptoms[,] and to perform at a consistent pace without an unreasonable number and length of rest periods," he ultimately concluded that Plaintiff was able "to perform work-related activities in a low contact setting."[24] (Tr. 283.) Dr Shubeck found Plaintiff was not

_____

[23]In order for Plaintiff's functional limitation to be considered severe, he must have a marked limitation in at least two of the four categories used to evaluate a claimant's ability to function. Sharp, 705 F. Supp. at 1119.

[24] ALJ Lee did not include discussion of Dr. Shubeck's evaluation.

significantly limited in the other 17 categories of the mental residual functional capacity assessment.  Additionally, clinician Delacruz found Plaintiff's speech to be goal directed, relevant, and logical. (Tr. 303.)  Her memory, concentration and attention span were unimpaired, and her insight limited. (Tr. 308-09.)

The third criteria to consider is Plaintiff's demonstrated, "concentration, persistence and pace."  This element of the inquiry refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. Sharp, 705 F. Supp. at 1119.  ALJ Lee found that Plaintiff's concentration, persistence, and pace were only mildly limited based on the evaluations of her treating clinician, Mr. Delacruz. (Tr. 309.)  ALJ Lee expressly considered Dr. Buceta's report finding memory limitations, but dismissed Dr. Buceta's observations because Plaintiff did not make an effort to remember information, and overall, presented a contrived and exaggerated picture of her problems. (Tr. 14.)

Finally, based on the absence of emergency room or inpatient hospital visits, ALJ Lee concluded that Plaintiff has not experienced repeated episodes of decompensation. Id.  While Plaintiff testified she had suicidal thoughts in March 2003, Dr. Pollack's report stated Plaintiff indicated she had no homicidal or suicidal ideations. (Tr. 224.)  Further, while Plaintiff told ALJ Lee that she heard voices, Dr. Pollack's report states Plaintiff indicated she had no auditory or visual hallucinations.  Id.

Since Plaintiff's ability to function socially was the only criteria in which Plaintiff had a marked functional limitation, ALJ Lee properly concluded that Plaintiff's functional limitations were not severe.  ALJ Lee's decision that Plaintiff retains the residual functional capacity to perform work is further supported by Plaintiff's consistently high Global Assessment of

Functioning (GAF) results.  Dr. Dicovsky gave Plaintiff a GAF of 60. (Tr. 315.)  Dr. Buceta also

gave plaintiff a GAF of 60. (Tr. 220.)  Her treating clinician, Mr. Delacruz, initially gave plaintiff

a GAF of 65 on her intake (Tr. 338), and a GAF of 55-60 on her Outpatient Behavioral Medicine

Treatment Service Plan. (Tr. 329.)  Plaintiff's consistently high GAFs support ALJ Lee's

decision that Plaintiff was not mentally disabled. Compare with Ross v. Shalala, 865 F. Supp.

286 (W.D. Pa. 1994) (remanded where plaintiff had GAF of 25-35).

       Based on the absence of medical diagnoses that Plaintiff is mentally disabled, optimistic

prognoses, consistently high GAFs, and a lack of hospitalizations, ALJ Lee's conclusion that

Plaintiff's mental impairments do not preclude her residual functional capacity of obtaining

employment is supported by substantial evidence.  This Court finds that substantial evidence

supports ALJ Lee's conclusion at step four of the evaluation that Plaintiff has the mental residual

functional capacity (RFC) to perform her past relevant work.

**B. ALJ Lee Appropriately Dismissed Plaintiff's Subjective Complaints**

       Plaintiff argues ALJ Lee erred in failing to consider her subjective complaints of pain.

(Pl. Mem. at 8.)  However, Plaintiff's subjective complaints of a disabling mental impairment are

contradicted by objective medical evidence and her testimony.  Although Plaintiff testified she

generally sleeps during the day and cannot take care of herself (Tr. 33,) ALJ Lee noted that the

mental status evaluations conducted by Barnert Hospital and Dr. Buceta indicated that Plaintiff is

a cooperative, logical, and coherent individual who retained intact cognitive functions and

displayed no impairment in memory functions. (Tr. 15.)

       Plaintiff's subjective complaints are further contradicted by her testimony.  In January,

2002, Plaintiff answered a questionnaire stating that she visited her friend and accompanied her

27

on shopping trips. (Tr. 149.)  Plaintiff stated that she does her own cooking and cleaning,

although her son sometimes helps her. (Tr. 150.)  In her report to Dr. Buceta, Plaintiff also stated

that she goes on walks in the afternoon and watches television. (Tr. 220.)

Subjective pain alone may not be a sufficient basis for disability benefits.  <u>Green v.

Schweiker</u>, 749 F.2d 1066 (3d Cir. 1984) (citations omitted).  This is particularly true when

subjective complaints are in contradiction with objective medical evidence. <u>Id.</u> at 1068.  Here,

Plaintiff's subjective complaints of pain were inconsistent with objective medical evidence and

her own testimony.  ALJ Lee did not err in finding that Plaintiff's subjective complaints

regarding the extent of her incapacitation were not credible.

**C. <u>ALJ Lee Was Not Required to Perform Step Five of the Evaluation Process.</u>**

Plaintiff also argues that ALJ Lee erred by not performing step five of the evaluation

process.  Only when the Plaintiff demonstrates that he is unable to perform his former job, does

"the burden [shift] to the Commissioner to prove that there is some other kind of substantial

gainful employment he is able to perform."  <u>Kangas v. Bowen,</u> 823 F.2d 775, 777 (3d Cir. 1987).

Moreover, in 2003, the Supreme Court of the United States held that the finding of availability of

Plaintiff's past relevant work is not required at step four of the sequential evaluation process.

<u>Barnhart v. Thomas</u>, 540 U.S. 20, 28 (2003).

In order to evaluate Plaintiff's claim under the fourth step of the inquiry, ALJ Lee was

required to determine Plaintiff's residual functional capacity.  Plaintiff stated in her testimony

that the job of an assembler involved lifting 25-30 boxes a day, each weighing around 25 pounds.

(Tr. 25.)  In her disability report, Plaintiff reported that her job did not involve any heavy lifting.

(Tr. 87.)  ALJ Lee found that Plaintiff's ability to lift objects such as those weighing twenty to

twenty-five pounds met the exertional requirements of her past relevant job as an assembler. (Tr. 15.)

In making this determination, ALJ Lee considered the fact that contrary to her testimony that she cannot lift more than ten pounds, Plaintiff's medical records contain no evidence of diagnostic testing or physical examinations that corroborate a chronic or acute spinal impairment. Id.  The ALJ also considered a questionnaire submitted by the Plaintiff describing her daily activities, Dr. Pollack's report indicating his observations that Plaintiff had no difficulties rising from the seated position or climbing on or off the examining table, which is inconsistent with the presence of severe tenderness and spasm or significant limitation in spinal motion. Id.

ALJ Lee also found that Plaintiff's nonexertional limitations are consistent with her past relevant job as an assembler. (Tr. 16.)  Dr. Shubeck reported that Plaintiff is limited to work that requires minimal contact with other people on a sustained basis. (Tr. 283.)  Since she was neither a supervisor nor a lead worker, the ALJ found that Plaintiff's job did not require more than minimal social interaction with others on a sustained basis. Id.

ALJ Lee found that Plaintiff's asserted functional limitations were inconsistent with the objective medical evidence, which did not support a finding that Plaintiff was disabled or otherwise precluded from performing her past relevant work.  ALJ Lee's evaluation stopped appropriately at step four when he determined that Plaintiff could perform her past relevant work.

Plaintiff also claims that ALJ Lee erred by not having a vocational expert testify. However, ALJ Lee was not required to seek the testimony of a vocational expert.  An ALJ can seek the assistance of a vocational expert in determining whether the claimant's skills can be used in other available work and whether other jobs exist in the national economy which

29

claimant can perform.  20 C.F.R. § 404.1566(e) (2003).  The ALJ makes the decision as to whether such an expert will be sought, and is not required to seek the assistance of a vocational expert, if Plaintiff does not have a significant non-exertional limitation that erodes his or her occupational base.  20 C.F.R. § 404.1566(e); <u>see</u> <u>Sykes v. Apfel</u>, 228 F.3d 259, 270 (3d Cir. 2000).

      In support of her argument that ALJ Lee did not develop the record, Plaintiff asserts that ALJ Lee should have sent Plaintiff for a consultative exam regarding her memory difficulties. Yet, the claimant bears the burden to prove the first four steps in establishing her disability.  42 U.S.C. § 423(d)(5) (2000); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Therefore, it is not required that ALJ Lee send Plaintiff for further examination.  ALJ Lee provided his reasoning for rejecting Plaintiff's claim of short term memory problems. (Tr. 17.)  Based on the foregoing, this Court finds that the record was adequately developed.

## <u>CONCLUSION</u>

      For the reasons above, this Court finds that substantial evidence exists to support the Commissioner's decision denying DIB and SSI benefits.  Thus, the Commissioner's decision is AFFIRMED.

                  S/Joseph A. Greenaway, Jr.
                  JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  April 27, 2005